A08A2413. WALLACE v. THE STATE.
(671 SE2d 911)

JOHNSON, Presiding Judge.

A jury found Antonio Wallace guilty of armed robbery, three counts of aggravated assault, and three counts of possession of a firearm during the commission of a crime. Wallace appeals, alleging (1) the trial court erred in admitting certain identification testimony, (2) the trial court erred in admitting similar transaction evidence, (3) the evidence was insufficient to support the jury's verdict, and (4) he received ineffective assistance of counsel. We find no error and affirm Wallace's convictions.

The facts, viewed in a light most favorable to support the jury's verdict, show that on September 24, 2005, a man later identified as Wallace approached the victims from behind while they were waiting at a bus stop. When the first victim turned around, a black male without a shirt, but with navy blue pants and a white t-shirt covering his face, "yanked" the victim and pointed a pistol at her. The robber struggled with the victim, eventually pulled her purse away, and fled on foot. He ran into the trailer park adjacent to the bus stop.

The second victim, who was also standing at the bus stop, testified that the robber pointed a gun at her. The robber then pointed the gun at the first victim's head, grabbed the first victim, took the first victim's purse, then fled. The second victim described the robber as a black male with blue pants, no shirt, and a white t-shirt covering his face.

Police responded within four or five minutes after the robbery and spoke with the first victim, who spoke only Spanish, through a citizen interpreter. Based on information from this first victim and

---

[10] See *Gordon*, supra at 137 (2).

other witnesses who saw the robber flee into the trailer park, police entered the trailer park and began looking for a black male with blue pants and no shirt. Officers discovered Wallace, who was wearing blue pants and a pinstripe shirt. Wallace was sweating, breathing heavily and running. An officer yelled at Wallace to stop, but Wallace continued to run, hiding behind and peeking around the corner of a trailer. Officers caught and detained Wallace, whom they identified in court.

A short time later, police took the first victim to a show-up, where she identified Wallace as the man who had robbed her. The first victim also identified Wallace at the preliminary hearing held ten days later, but was unable to identify Wallace at trial. Police also escorted the second victim to the location where Wallace had been detained, and the second victim identified Wallace as the man who had taken the first victim's purse and threatened both of them with a gun.

The evidence further showed that Wallace lived in the trailer park where the robber fled, and Wallace was identified by a woman and her fiancé who lived across the street from Wallace's trailer home. The woman testified that she was sitting on her front porch when she heard a girl scream and saw a shirtless black male with a white t-shirt partially covering his face, a gun in one hand and a purse in the other running in the trailer park. The witness was able to see part of the man's face where the t-shirt was falling off of his face while he was running. The man banged on the trailer home where Wallace lived and said, "let me in, let me in." The witness heard the trailer home door open and close. She then went into her trailer and told her fiancé what she had seen. Fifteen to twenty minutes later, this witness was taken to the location where Wallace had been detained and identified Wallace as the person she saw running with the gun and purse in his hands. She also identified Wallace in court as the same person.

The witness' fiancé knew Wallace from the neighborhood. After hearing the witness' observations, the fiancé went to Wallace's trailer home and knocked on the door. Wallace came to the window and peered out. However, a woman answered the door and told the fiancé that no one had entered Wallace's trailer. The fiancé also positively identified Wallace in court.

After the two victims and Wallace's neighbor identified him, police searched Wallace's trailer home and discovered a white t-shirt in a child's toy box. The state also admitted evidence of a prior armed robbery committed by Wallace on August 7, 1997, in which he approached a couple with a gun while they were sitting outside on a bench.

1. Wallace argues on appeal that the trial court erred in allowing the one-on-one showup identification testimony of the first victim. However, this issue was not raised in any of his three motions for new trial or during the motion hearing held by the trial court. And, Wallace's trial counsel made no objection to the testimony during the trial. This issue, therefore, is not preserved for appellate review.[1] Despite this fact, because Wallace contends that trial counsel was ineffective for failing to object to the identification testimony, we will address the merits of this enumeration of error.

Although a one-on-one showup is inherently suggestive, identification testimony produced from the showup is not necessarily inadmissible.[2] We must apply a two-part test to determine whether the showup was impermissibly suggestive, and, if the showup was impermissibly suggestive, we then consider the totality of the circumstances to determine whether a "very substantial likelihood" existed of irreparable misidentification.[3] With regard to part one of the test, this Court has previously held that on-the-scene showup identifications, like the one in the present case, are often necessary "due to the practicabilities inherent in such situations."[4] Thus, as long as this type of showup was reasonably and fairly conducted at or near the time of the offense, it is not impermissibly suggestive and we need not reach the second part of the test.[5]

Here, police responded to the scene within five minutes and immediately began looking for a black male wearing blue pants and no shirt. Officers spotted Wallace, who was wearing blue pants and running, ordered him to stop, and pursued Wallace when he fled and tried to conceal himself. Within twenty minutes, the two victims and Wallace's neighbor individually identified Wallace while he was in police custody.

While Wallace complains of the first victim's testimony, alleging police told her during the showup that Wallace was the person who robbed her, the testimony does not support Wallace's assertion. The record shows that the first victim saw the person police had detained and told police that he was the person who had robbed her. She subsequently identified Wallace during the preliminary hearing as the robber. The record shows that the first victim saw Wallace when she turned around to face him, struggled with him while he grabbed both her and her purse, observed him flee into the trailer park, described the clothing he was wearing to police officers, and identi-

---

[1] See *Carr v. State*, 275 Ga. 185, 186 (2) (563 SE2d 850) (2002).

[2] See *Young v. State*, 272 Ga. App. 304, 310 (4) (a) (612 SE2d 118) (2005).

[3] (Punctuation omitted.) Id.

[4] (Citation and punctuation omitted.) Id. at 311 (4) (a).

[5] Id.

fied him within 20 minutes of the robbery. The trial court did not err in finding that the showup conducted with the first victim was reasonably and fairly conducted at or near the time of the offense and that the first victim's identification was reliable.[6]

In addition, Wallace fails to address the identifications made by the second victim and the neighbor. Given the totality of the circumstances, including the identifications by the second victim and the neighbor, which Wallace does not include as error in his appellate brief, we find little likelihood of misidentification.[7]

2. Wallace next alleges the trial court erred in admitting evidence of the prior robbery committed by him because the prior robbery was not sufficiently similar to the robbery in the present case and was removed in time from the present robbery. We find no error.

For a similar transaction to be admissible, the state must (1) identify a proper purpose for admitting the transaction, (2) show that the accused committed the separate offense, and (3) show a sufficient connection or similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.[8] The trial court's determination that similar transaction evidence is admissible will not be disturbed on appeal absent an abuse of discretion.[9]

Here, the similar transaction involved an armed robbery eight years earlier in which Wallace threatened two victims with a gun and took watches, jewelry and a wallet. The state offered the evidence to show Wallace's course of conduct, bent of mind, motive and identity. Wallace does not dispute that these are proper purposes or that he committed the prior robbery. He merely contends that the state failed to show a sufficient similarity between the prior armed robbery and the crime charged so that proof of the former tends to prove the latter. He further argues that the similar transaction was so removed in time that its prejudicial effect outweighed any probative value. We disagree.

The record shows that both robberies occurred in Savannah, both robberies occurred outside, both robberies involved victims just sitting or waiting outside, Wallace threatened both sets of victims with a pistol, and the property taken in both robberies included a purse or wallet. In addition, while the robberies occurred eight years apart, Wallace remained in prison on the first robbery until seven

[6] See id.

[7] See *Williams v. State*, 269 Ga. App. 673, 678 (3) (b) (605 SE2d 83) (2004).

[8] See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[9] See *Gibson v. State*, 268 Ga. App. 696, 698 (2) (b) (603 SE2d 319) (2004).

months before the second robbery occurred. Lapse of time is merely one factor to be taken into consideration when balancing the probative value of the evidence against its prejudicial impact,[10] and this is especially true when the defendant has not had the opportunity to commit another offense because he has been incarcerated. The trial court did not abuse its discretion in admitting the similar transaction evidence.

3. Wallace contends the evidence was insufficient to support the jury's verdict because the only evidence tying him to the crime was unreliable identification testimony. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[11] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[12] "As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict."[13]

Armed robbery occurs when a person takes property of another from the person or the immediate presence of another, with the intent to commit theft, by use of an offensive weapon, or any replica, article or device having the appearance of a weapon.[14] A person commits the offense of aggravated assault when he assaults with intent to rob or uses a deadly weapon or any object, device or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.[15] Here, two victims and an eyewitness testified regarding the facts surrounding the incident. And, the testimony of a single witness is generally sufficient to establish a fact.[16] Viewing the evidence in a light most favorable to support the jury's verdict, the evidence was sufficient for a rational trier of fact to find Wallace guilty beyond a reasonable doubt of the charged offenses.

4. Wallace asserts his trial counsel was ineffective for failing to move to exclude the showup identification testimony and failing to investigate Wallace's girlfriend to discover exculpatory evidence or an alibi. We find no error.

---

[10] See *Ledford v. State*, 275 Ga. App. 107, 109-110 (620 SE2d 187) (2005).

[11] *Trumpler v. State*, 261 Ga. App. 499 (1) (583 SE2d 184) (2003).

[12] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[13] (Punctuation omitted.) *Reed v. State*, 293 Ga. App. 479, 480 (1) (668 SE2d 1) (2008).

[14] OCGA § 16-8-41 (a).

[15] OCGA § 16-5-21 (a) (1), (2).

[16] See *Reed*, supra at 481 (1).

To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense.[17] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[18] "[I]n evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[19] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result.[20]

As we found in Division 1, the showup identification testimony was admissible. Trial counsel, therefore, was not ineffective for not objecting to or moving to exclude the testimony.[21]

As for Wallace's assertion that his girlfriend "could have provided exculpatory evidence for Appellant, and possibly an alibi," it is Wallace's duty to affirmatively show how counsel's failure would have affected the outcome of the case.[22] Wallace's girlfriend did not testify during the motion for new trial hearing, and Wallace has not pointed to any exculpatory evidence that could have been discovered or to an alibi that might have been provided by his girlfriend. Because Wallace failed to proffer any evidence or testimony that was favorable to the defense and would likely have affected the outcome of the trial, he has not shown that trial counsel's failure to further investigate or call his girlfriend to testify prejudiced his defense.[23] This is especially true since Wallace's trial counsel testified at the motion for new trial hearing that Wallace specifically told the attorney he did not want his girlfriend to testify. The trial court did not err in finding that Wallace received effective assistance of trial counsel.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

---

[17] *Fults v. State*, 274 Ga. 82, 83-84 (2) (548 SE2d 315) (2001).

[18] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[19] (Citations and punctuation omitted.) *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[20] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

[21] See *Arnold v. State*, 253 Ga. App. 307, 308 (1) (560 SE2d 33) (2002) (trial counsel is not deficient in failing to file a frivolous motion); *Lane v. State*, 250 Ga. App. 160, 161-162 (1) (549 SE2d 468) (2001).

[22] *Robinson v. State*, 278 Ga. 31, 35 (3) (b) (597 SE2d 386) (2004).

[23] See *Wheat v. State*, 282 Ga. App. 655, 657 (1) (b) (639 SE2d 578) (2006).

DECIDED JANUARY 6, 2009.

*Barbara N. Lanier*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams*, Assistant *District Attorney*, for appellee.