## A10A0322. JOHNSON v. THE STATE.

(690 SE2d 683)

BLACKBURN, Presiding Judge.

Following a jury trial, Kenneth Johnson was convicted on one count each of criminal damage to property in the second degree,[1] possession of a knife during the commission of a crime,[2] carrying a concealed weapon,[3] and misdemeanor obstruction of a law enforcement officer.[4] He appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence and arguing that the trial court erred by denying his motion to suppress identification evidence, by denying his motion to suppress evidence obtained as a result of his unlawful arrest, by admitting similar transaction evidence, by failing to charge the jury on mere presence, and by failing to find that his trial counsel rendered ineffective assistance. For the reasons set forth below, we reverse Johnson's conviction of possession of a knife during the commission of a crime but otherwise affirm.

1. We first address Johnson's contention that the evidence was insufficient to support his two convictions involving possession of a knife. "On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [Johnson] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Dennis v. State*.[5] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*.[6]

So viewed, the record shows that at approximately 3:00 a.m. on November 11, 2007, Brandie Morton was talking to a friend on her cell phone when she realized that her phone's battery needed to be re-charged. Because the only battery charger she had was in her car, she left the apartment where she was staying, walked down to the apartment complex's parking lot, and got into her car. As she began charging her phone, she saw a man, who was later identified as Johnson, attempting to cut the convertible top of another vehicle in the parking lot. She immediately dialed 911, informed the operator as to what was occurring, and described the suspect as being a middle-aged, black male, wearing a dark coat. As Morton was talking to the 911 operator, Johnson walked away.

---

[1] OCGA § 16-7-23 (a) (1).

[2] OCGA § 16-11-106 (b) (2).

[3] OCGA § 16-11-126 (a).

[4] OCGA § 16-10-24 (a).

[5] *Dennis v. State*, 294 Ga. App. 171 (669 SE2d 187) (2008).

[6] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

Shortly after Morton's 911 call, a local police officer received a dispatch regarding the attempted vehicle break-in and headed toward the scene. Less than a quarter of a mile away from the apartment complex's parking lot, the officer saw Johnson, who matched the description of the vehicle break-in suspect provided by the dispatcher, walking down the street. The officer stopped and asked Johnson for his name, and Johnson complied. However, when the officer asked him to put his hands on the patrol vehicle, Johnson fled into an adjacent park. Within a few minutes, another officer arrived, and the two officers arrested Johnson. During that arrest, the officers found a knife in Johnson's back pocket. Shortly thereafter, the second officer took Johnson back to the apartment complex's parking lot in his patrol vehicle where Morton identified him as the person she saw trying to cut into the top of the convertible.

Johnson was indicted on one count each of entering an automobile with intent to commit theft, criminal damage to property in the second degree, possession of a knife during the commission of a crime, carrying a concealed weapon, and misdemeanor obstruction of a law enforcement officer. Prior to trial, Johnson filed a motion to suppress Morton's identification of him and any evidence obtained as a result of his arrest, both of which the trial court denied. At trial, the owner of the convertible and the person who repaired it testified regarding the cut to the vehicle's top and that it cost over $500 to repair the damage. In addition, Morton testified regarding witnessing Johnson's attempt to cut the top of the convertible, the two arresting officers testified as to their investigation of the case, and Johnson testified in his own defense. At the trial's conclusion, the jury found Johnson not guilty on the count of entering an automobile but guilty on the remaining four counts. Subsequently, Johnson obtained new counsel and filed a motion for new trial, which the court denied after a hearing. This appeal followed.

(a) *Carrying a concealed weapon.* Johnson contends that the evidence was insufficient to support his conviction of carrying a concealed weapon. We disagree.

The offense of carrying a concealed weapon is defined by OCGA § 16-11-126 (a) as when a person

> knowingly has or carries about his or her person, unless in an open manner and fully exposed to view, any bludgeon, knuckles, whether made from metal, thermoplastic, wood, or other similar material, firearm, knife designed for the purpose of offense and defense, or any other dangerous or deadly weapon or instrument of like character outside of his . . . home or place of business. . . .

YALE LAW LIBRARY

In this matter, the evidence showed that when Johnson was searched upon his arrest, he was found to be carrying a knife. "[I]t was purely a question for the jury in this case to determine whether or not the knife exhibited to [the jury] met the definition . . . in the Code section." *Oliver v. State*.[7] The jury obviously decided this issue against Johnson. Thus, the evidence was sufficient to support his conviction on the count of carrying a concealed weapon. See *McCarty v. State*.[8]

(b) *Possession of a knife during the commission of a crime.* Johnson contends that the evidence was insufficient to support his conviction on the count of possessing a knife during the commission of a crime, arguing that, under OCGA § 16-11-106, it cannot be predicated on his conviction of criminal damage to property in the second degree. We agree.

OCGA § 16-11-106 (b) provides in part:

> Any person who shall have on or within arm's reach of his or her person a firearm or a knife having a blade of three or more inches in length during the commission of, or the attempt to commit: . . . [a]ny crime against or involving the person of another; . . . [t]he unlawful entry into a building or vehicle; . . . [a] theft from a building or theft of a vehicle; . . . [a]ny crime involving the possession, manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance . . . ; or [a]ny crime involving the trafficking of . . . illegal drugs . . . , and which crime is a felony, commits a felony[.]

In this matter, Johnson was acquitted of entering an automobile with intent to commit theft, and thus his conviction of possession of a knife during the commission of a crime cannot be predicated on that charge. See *Harrison v. State*.[9] Furthermore, Johnson's possession of a knife during the commission of a crime conviction cannot be based on his conviction of criminal damage to property in the second degree as that felony is not listed as a predicate crime under OCGA § 16-11-106 (b). "Criminal statutes are construed strictly against the State, they must be read according to the natural and obvious import of their language, and their operation should not be limited or extended by application of subtle and forced interpreta-

---

[7] *Oliver v. State*, 106 Ga. App. 493, 494 (127 SE2d 325) (1962).

[8] *McCarty v. State*, 269 Ga. App. 299, 302 (2) (603 SE2d 666) (2004).

[9] *Harrison v. State*, 213 Ga. App. 366, 368 (3) (444 SE2d 613) (1994).

tions." (Punctuation omitted.) *Christian v. State.*[10] Accordingly, we reverse Johnson's conviction of possession of a knife during the commission of a crime and remand the case for resentencing.

2. In two separate enumerations of error, Johnson contends that the trial court erred by denying his motion to suppress evidence obtained as a result of his unlawful arrest and that, in light of his unlawful arrest, the evidence was insufficient to support his conviction of misdemeanor obstruction of a law enforcement officer. Both of these contentions are without merit.

(a) *Johnson's detention and arrest were lawful.* We first address Johnson's motion to suppress based on the alleged unlawfulness of his initial detention and arrest. The standard of review of a trial court's ruling on a motion to suppress is well established.

> When ruling on a motion to suppress, the trial court sits as the trier of facts, and its findings regarding them are not disturbed on appeal if there is any evidence to support them; the trial court's decisions with regard to questions of fact and credibility must be accepted unless clearly erroneous, and a reviewing court construes the evidence most favorably to the trial court's findings.

(Punctuation omitted.) *Whitmore v. State.*[11]

At the hearing on Johnson's motion to suppress evidence obtained as a result of his allegedly unlawful arrest, the officers who investigated the matter testified that on the night Johnson was arrested, they received a radio dispatch, informing them that a 911 caller had reported that a black male, wearing a dark jacket, was attempting to cut into the top of a convertible that was parked in an apartment complex's parking lot. Both officers proceeded separately to the apartment complex, and less than ten minutes after receiving the dispatch, one of the officers saw a man fitting the description provided by the dispatcher walking a short distance away from the complex. The officer asked the man, who turned out to be Johnson, for his name, and Johnson complied. However, when the officer requested that Johnson place his hands on the officer's patrol vehicle, so that the officer could conduct a weapons search, Johnson fled into a nearby park. Shortly thereafter, the other officer arrived, and Johnson was arrested for obstruction and for attempting to break into the convertible.

Johnson argues that his arrest was unlawful because his initial detention was not based upon any reasonable articulable suspicion.

---

[10] *Christian v. State*, 297 Ga. App. 596, 597 (1) (677 SE2d 767) (2009).
[11] *Whitmore v. State*, 289 Ga. App. 107, 107 (657 SE2d 1) (2008).

This argument is without merit. The officer who first encountered Johnson did so after responding to a 911 call. "As we have noted, a dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report." (Punctuation omitted.) *Moore v. State.*[12] See *Prather v. State.*[13] Furthermore, in light of the information conveyed by the 911 call that the suspect was attempting to cut into the convertible's top, the officer's subsequent "attempt to undertake a weapons pat-down incident to a *Terry*-type investigative detention was neither arbitrary nor harassing." *Franklin v. State.*[14] See *Lester v. State*[15] (facts conveyed by 911 call authorized officer to frisk defendant at scene); *Woods v. State*[16] (officer investigating vehicle break-ins in mall parking lot without backup was justified in conducting limited pat-down search of defendant acting suspiciously when encountered in parking lot). "Once [Johnson] was subdued after attempting to flee the scene, at the very least there was probable cause to arrest him for obstruction of an officer." *Franklin*, supra, 281 Ga. App. at 411. Accordingly, the trial court did not err by denying Johnson's motion to suppress evidence obtained as a result of an unlawful arrest.

(b) *The evidence was sufficient to support the obstruction conviction.* Johnson contends that the evidence was insufficient to support his conviction of obstruction of a law enforcement officer, arguing that arresting officers were not lawfully discharging their duties. We disagree.

Under OCGA § 16-10-24 (a), "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." As noted in Division 2 (a), supra, the officer who first encountered Johnson had a reasonable articulable suspicion to detain him based on the 911 call and dispatch. When the officer requested that Johnson place his hands on the officer's vehicle in order to allow the officer to conduct a weapons pat-down, Johnson fled. Flight after a lawful command constitutes obstruction of an officer. *Johnson v. State.*[17] Accordingly, the evidence was sufficient to support the jury's finding that Johnson was guilty of the charge of misdemeanor obstruction of a law enforcement officer beyond a reasonable doubt.

---

[12] *Moore v. State*, 281 Ga. App. 141, 143 (1) (635 SE2d 408) (2006).

[13] *Prather v. State*, 279 Ga. App. 873, 874 (1) (633 SE2d 46) (2006).

[14] *Franklin v. State*, 281 Ga. App. 409, 411 (1) (636 SE2d 114) (2006).

[15] *Lester v. State*, 287 Ga. App. 363, 365 (651 SE2d 766) (2007).

[16] *Woods v. State*, 275 Ga. App. 340, 343-344 (1) (b) (620 SE2d 609) (2005).

[17] *Johnson v. State*, 264 Ga. App. 889, 892 (2) (592 SE2d 507) (2003).

3. Johnson contends that the trial court erred by denying his motion to suppress Brandie Morton's identification of him, arguing that the showup identification was impermissibly suggestive. We disagree.

> We must apply a two-part test to determine whether the showup was impermissibly suggestive, and, if the showup was impermissibly suggestive, we then consider the totality of the circumstances to determine whether a "very substantial likelihood" existed of irreparable misidentification.

*Wallace v. State.*[18] As to part one of the test, "[o]n-the-scene 'showup' identifications, like the one here, have been held not to be impermissibly suggestive but necessary due to the practicabilities inherent in such situations." (Punctuation omitted.) *Watson v. State.*[19] "Those include the need for a speedy police investigation and the need to resolve promptly any doubts as to identification so as to enhance the accuracy and reliability of the identification, thus expediting the release of innocent subjects." (Punctuation omitted.) *Butler v. State.*[20] "As long as the showup was reasonably and fairly conducted at or near the time of the offense, we do not reach the second part of the test." *Young v. State.*[21]

Here, at the hearing on Johnson's motion to suppress Morton's identification of him, Morton's 911 call was played for the trial court. In addition, the investigating officers testified that Johnson was arrested less than a quarter of a mile from the apartment complex's parking lot where the attempted break-in of the vehicle occurred, that he was arrested less than ten minutes after Morton called 911, and that he matched the description provided by Morton and the dispatcher. Immediately after Johnson was arrested, one of the officers placed him in the back seat of his patrol vehicle and drove him back to the parking lot, at which time Morton identified Johnson as the person whom she witnessed trying to cut into the top of the convertible.

Citing *Towns v. State*,[22] Johnson argues that the showup identification was impermissibly suggestive because Morton identified him while he was sitting in the back seat of the officer's patrol vehicle after having been arrested. However, "[t]he mere fact that [Johnson was] in a police car when [he was] identified does not taint the

---

[18] *Wallace v. State*, 295 Ga. App. 452, 454 (1) (671 SE2d 911) (2009).

[19] *Watson v. State*, 243 Ga. App. 636, 638 (c) (534 SE2d 93) (2000).

[20] *Butler v. State*, 276 Ga. App. 161, 164 (1) (623 SE2d 132) (2005).

[21] *Young v. State*, 272 Ga. App. 304, 311 (4) (a) (612 SE2d 118) (2005).

[22] *Towns v. State*, 136 Ga. App. 467 (221 SE2d 631) (1975).

identification[ ]." *Young,* supra, 272 Ga. App. at 311 (4) (a). See *Butler,* supra, 276 Ga. App. at 164 (1); *Jenkins v. State.*[23] Johnson points to no other evidence that the showup was impermissibly suggestive. Moreover, we find *Towns* distinguishable. In *Towns,* the victim saw his assailant for only a few seconds and did not identify the defendant until he went to the police station the next day. Supra, 136 Ga. App. at 468-469 (1). Here, Morton watched Johnson for a few minutes as he attempted to cut the top of the convertible, and although the incident occurred at night, Morton testified that the parking lot was fairly well lit. Furthermore, Morton identified Johnson less than 15 minutes after the incident occurred. Accordingly, the trial court did not err by denying Johnson's motion to suppress Morton's showup identification of him. See *Wallace,* supra, 295 Ga. App. at 454-455 (1); *Butler,* supra, 276 Ga. App. at 164 (1).

4. Johnson similarly contends that Morton's in-court identification of him was impermissibly tainted by the fact that prior to a preliminary hearing, Morton saw Johnson while he was shackled, dressed in prison garb, and being escorted into the courthouse by a sheriff's deputy. We disagree.

At the hearing on Johnson's motion to suppress, a sheriff's deputy testified that on January 11, 2008, he transported Johnson from the jail to the courthouse for a committal hearing.[24] Johnson was wearing a prison jumpsuit and, pursuant to the deputy's standard practice, was handcuffed and shackled so he would not pose a risk of flight. The deputy further testified that just after he and Johnson got on a courthouse elevator, Morton, who was going to be testifying at the same hearing, came in behind them and asked if she could ride with them up to the second floor where the courtroom was located.

Pretermitting whether the sheriff's deputy who transported Johnson to the committal hearing should have taken better precautions to ensure the integrity of the identification process, see *Bradley v. State,*[25] we find that Morton's in-court identification of Johnson was not impermissibly tainted by this chance encounter. "[A] witness's in-court identification is admissible if it has an independent origin." *Doublette v. State.*[26] See *Jacobs v. State.*[27] Here, as discussed in Division 3, supra, Morton had an independent basis for her identification of Johnson through her witnessing him trying to cut the top of the convertible. Accordingly, the trial court did not err in

---

[23] *Jenkins v. State,* 216 Ga. App. 433 (3) (454 SE2d 543) (1995).

[24] The record on appeal did not include a transcript of this hearing.

[25] *Bradley v. State,* 148 Ga. App. 722, 723 (2) (252 SE2d 648) (1979).

[26] *Doublette v. State,* 278 Ga. App. 746, 749 (1) (629 SE2d 602) (2006).

[27] *Jacobs v. State,* 207 Ga. App. 714, 715 (1) (429 SE2d 256) (1993).

denying Johnson's motion to suppress Morton's in-court identification of him. See *Doublette*, supra, 278 Ga. App. at 749 (1).

5. Johnson contends that the trial court erred in allowing the State to introduce similar transaction evidence of his previous conviction of entering an automobile with intent to commit theft, arguing that the transaction was not sufficiently similar to the crimes for which he was being tried. Johnson has waived his right to raise this argument on appeal. "Although [Johnson] objected to the similar transaction evidence at a pre-trial hearing conducted pursuant to Uniform Superior Court Rule 31.3 (B), he raised no objections when any of the evidence was elicited during trial, as he was required to do to preserve any objection." *Robinson v. State*.[28] "The rule requiring a trial objection on similar transaction evidence is firm in Georgia jurisprudence, and we are bound to follow it." (Punctuation omitted.) *Warner v. State*.[29]

6. Johnson contends that the trial court erred in refusing his request to charge the jury on mere presence. However, Johnson did not object or reserve objections to the jury charges and therefore has waived appellate review of those charges as given. *Robinson v. State*.[30] See *Metz v. State*.[31] Furthermore, Johnson's contention is belied by the record. Although the trial court stated during the charge conference that it did not believe that the mere presence charge was applicable, it nevertheless charged the jury on mere presence, stating:

> I charge you further that mere presence of a person at the scene of the commission of a crime at the time of its perpetration without more will not authorize a jury to find the person who was merely present guilty of consent in and concurrence in the commission of the crime unless the evidence shows beyond a reasonable doubt that such person committed the alleged crime.

Thus, Johnson's contention is without merit.

7. In two separate enumerations of error, Johnson contends that the trial court erred by failing to find that his trial counsel rendered ineffective assistance. These contentions are without merit.

To establish ineffective assistance of counsel under *Strick-*

---

[28] *Robinson v. State*, 283 Ga. 546, 547 (661 SE2d 538) (2008).

[29] *Warner v. State*, 299 Ga. App. 56, 62 (4) (681 SE2d 624) (2009).

[30] *Robinson v. State*, 288 Ga. App. 219, 224 (6) (653 SE2d 810) (2007).

[31] *Metz v. State*, 284 Ga. 614, 620 (5) (669 SE2d 121) (2008).

*land v. Washington*,[32] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.

*Kurtz v. State*.[33] "Making that showing requires that [Johnson] rebut the strong presumption that [his] lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*.[34] "As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation omitted.) *Beck v. State*.[35] "We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous." *Kurtz*, supra, 287 Ga. App. at 825.

(a) Johnson contends that his trial counsel rendered ineffective assistance by failing to obtain a copy of the surveillance video from a convenience store located a short distance from the apartment complex parking lot where the attempted automobile break-in occurred, arguing that the video would have supported his alibi defense. We disagree.

During his trial, Johnson testified that he was at a nearby convenience store close to the time of the attempted break-in. He further testified that he also saw Morton at the store, which explained why she recognized him. At the hearing on his motion for new trial, Johnson testified that the store's surveillance video from the night of the incident would have supported his alibi defense, but that his counsel had neglected to obtain the video before it was erased. In support of his argument, Johnson called the office manager of the convenience store chain, who testified that the store's surveillance videos were preserved for at least two weeks and sometimes up to 45 days before being erased. The office manager also stated that no one contacted her to request a copy of the video around the time of the attempted automobile break-in. Johnson's trial counsel testified that shortly after he began representing Johnson, he contacted the convenience store about obtaining a copy of the surveillance video from the night in question but was told by the employee with whom he spoke that the surveillance video, as a matter of store practice, was erased after 72 hours unless a crime had

---

[32] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).
[33] *Kurtz v. State*, 287 Ga. App. 823, 825 (652 SE2d 858) (2007).
[34] *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004).
[35] *Beck v. State*, 292 Ga. App. 472, 474 (2) (a) (665 SE2d 701) (2008).

been committed at the store.

Based on this evidence, the trial court did not clearly err in rejecting Johnson's claim that trial counsel rendered ineffective assistance by failing to obtain a copy of the store's surveillance video. As the finder of fact at the hearing on Johnson's motion for new trial, the court was entitled to believe trial counsel that he attempted to obtain the video. See *Ransom v. State*.[36] Indeed, even the convenience store's office manager's testimony did not preclude the possibility that Johnson's trial counsel spoke to a different store employee, who unfortunately provided him with incorrect information regarding how soon the videos were erased.

Furthermore, no evidence was presented establishing what efforts, other than those actually undertaken by trial counsel, that a reasonably professional attorney should have made to procure the video that trial counsel did not exert. *Shaw v. State*.[37] Thus, the trial court was authorized to conclude that Johnson's trial counsel made reasonable efforts to establish Johnson's alibi defense. See *Marshall v. State*;[38] *Ransom*, supra, 297 Ga. App. at 906 (2) (a). "The fact that trial counsel was unable to do so did not amount to deficient performance." *Ransom*, supra, 297 Ga. App. at 906 (2) (a).

(b) Johnson contends that his trial counsel rendered ineffective assistance by failing to object to bad character evidence. We disagree.

During Johnson's trial, one of the investigating officers responded affirmatively when asked by the State's prosecutor whether he knew Johnson based on prior dealings with him. Johnson's trial counsel did not object to either the State's question or the officer's response. At the hearing on his motion for new trial, Johnson argued that this testimony constituted impermissible character evidence. However, Johnson failed to note that his trial counsel did not object to this testimony, and he did not question his trial counsel as to his reasons for not objecting. Johnson's "failure to ask trial counsel about this matter at the new-trial hearing means that we must presume counsel was acting strategically, thereby vitiating any ineffective assistance claim." *Allen v. State*.[39] Moreover, even if Johnson's trial counsel had objected to the officer's testimony, his objection would have been futile. "[T]estimony that a defendant is known to the police does not impermissibly place the defendant's character into issue." (Punctuation omitted.) *Jarrett v. State*.[40] Accordingly, the trial court did not err in denying Johnson's claim of

---

[36] *Ransom v. State*, 297 Ga. App. 902, 906 (2) (a) (678 SE2d 574) (2009).

[37] *Shaw v. State*, 286 Ga. 229, 232-233 (2) (686 SE2d 760) (2009).

[38] *Marshall v. State*, 285 Ga. 351, 353 (4) (a) (676 SE2d 201) (2009).

[39] *Allen v. State*, 299 Ga. App. 201, 202 (1) (683 SE2d 343) (2009).

[40] *Jarrett v. State*, 299 Ga. App. 525, 531 (7) (b) (683 SE2d 116) (2009).

ineffective assistance of counsel on this ground.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Barnes and Bernes, JJ., concur.*

DECIDED FEBRUARY 11, 2010.

*John G. Edwards*, for appellant.
*Joseph K. Mulholland, District Attorney*, for appellee.