**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 8, 2013**

# In the Court of Appeals of Georgia

A13A0863. PULLINS v. THE STATE.

MILLER, Judge.

Following a jury trial, James Pullins was convicted of burglary (OCGA § 16-7-1 (a) (2008)) and criminal trespass (OCGA § 16-7-21 (a)). Pullins filed a motion for new trial, which the trial court denied. On appeal, Pullins contends that (1) the evidence was insufficient to sustain his convictions, and (2) the trial court erred in denying his motion to suppress the pre-trial and in-court identifications of him. Finding no error, we affirm.

Viewed in the light most favorable to conviction,[1] the evidence shows that on July 6, 2008 at approximately 1:40 a.m., the victim's neighbor, Ricky Goss, was watching television in the bedroom of his apartment located in Fulton County,

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Georgia when he heard some noise. Goss looked out the window and saw Pullins loading the victim's furniture onto a truck. Goss noticed that the victim's apartment window was broken, there was glass under the window and Pullins had glass in his hair. Goss confronted Pullins, told Pullins to take the victim's "stuff" off the truck and said he was going to contact the police. Although Pullins told Goss that he had permission to "be there," Pullins took a mattress and bedroom furniture off the truck and put them back inside the apartment. Goss then went to the apartment management office and reported the burglary. By the time Goss returned, Pullins and the truck were gone.

An Atlanta police officer, who was already at the apartment complex, responded to the burglary report. When the officer arrived at the victim's apartment, he found the front door closed, but unlocked, and he found a broken window. The officer interviewed Goss, who gave a physical description of Pullins. The officer located Pullins approximately 15 minutes later. Pullins matched the description that Goss gave to police and was still within the apartment complex. The officer detained Pullins and took him back to the victim's apartment, where Goss positively identified Pullins as the burglar. The officer then placed Pullins under arrest.

1. Pullins contends that the evidence was insufficient to sustain his convictions. We disagree.

(a) Burglary

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another[.]" OCGA § 16-7-1 (a) (2008).

Here, the evidence showed that Pullins was seen loading the victim's furniture, television and other items onto a truck. The victim's missing property, including her television and some clothing, were never recovered. The victim did not know Pullins and did not give him permission to enter her apartment or take any of her belongings. Pullins's intent can be inferred from his actions in falsely telling Goss that he had permission to be at the victim's apartment and in taking the items off the truck when Goss told Pullins that he was going to contact the police. See *Foster v. State*, 288 Ga. 98, 100 (1) (701 SE2d 189) (2010) (defendant's intent may be inferred from his conduct after the commission of the crime); *Palmer v. State*, 243 Ga. App. 656, 657 (533 SE2d 802) (2000) (criminal intent may be inferred from words, conduct, demeanor, motive and all other circumstances connected with the charged crime). To the extent that Pullins argues that none of the stolen items were found in his

3

possession, stolen items need not be recovered to sustain a conviction for burglary. See *Wilcox v. State*, 310 Ga. App. 382, 385 (713 SE2d 468) (2011). Based on the trial evidence, the jury was authorized to find Pullins guilty of burglary beyond a reasonable doubt.

(b) Criminal Trespass

"A person commits the offense of criminal trespass when he or she intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less [.]" OCGA § 16-7-21 (a).

Here, the indictment charged Pullins with intentionally causing less than $500 in damage to the victim's apartment by breaking a window. The evidence showed that a window was broken in the victim's apartment and that Pullins had glass in his hair when he was loading the victim's furniture onto the truck. "Although there was no evidence of the specific monetary amount of damage done to the [window], the jurors were authorized to draw from their own experience in forming an estimate of the damage to the [window], which is an everyday object." (Citation omitted.) *Feagin v. State*, 317 Ga. App. 543, 546 (2) (731 SE2d 778) (2012); see also *Burrell v. State*, 293 Ga. App. 540, 542-543 (2) (667 SE2d 394) (2008). Accordingly, the evidence

4

was sufficient to authorize a rational trier of fact to find Pullins guilty of criminal trespass beyond a reasonable doubt.

2. Pullins also contends that the trial court erred in denying his motion to suppress the pretrial and in-court identification testimony. We discern no error.

Although a showup identification is inherently suggestive, identification testimony produced from the showup is not necessarily inadmissible. See *Butler v. State*, 290 Ga. 412, 414 (3) (721 SE2d 876) (2012).

> A [one-on-one] show-up may be permissible in aiding a speedy police investigation and because there were possible doubts as to the identification which needed to be resolved promptly and in order to enhance the accuracy and reliability of identification in order to permit the expeditious relief of innocent subjects. We generally first determine whether the identification procedure was impermissibly suggestive.

(Citations and punctuation omitted.) Id at 414-415 (3). If the showup was reasonably and fairly conducted at or near the time of the offense, it is not impermissibly suggestive, and we need not determine whether there was a substantial likelihood of irreparable misidentification. See id. at 415 (3); see also *Wallace v. State*, 295 Ga. App. 452, 454 (1) (295 Ga. App. 452) (2009).

5

Here, the responding officer canvassed the apartment complex looking for a person who matched the descriptions of the suspected burglar, which the officer received over the radio and from one of the witnesses outside the victim's apartment. Approximately 15 minutes later, the officer located Pullins inside the apartment complex and took him back to the crime scene where Goss and another neighbor identified him as the person they saw go into the victim's apartment. Pullins was outside of the officer's police car when the witnesses identified him. Goss was positive that Pullins was the man who broke into the victim's apartment because he spoke with Pullins face-to-face when he told Pullins that he was going to get the police. Additionally, both Goss and the other neighbor knew Pullins because he often hung around the apartment complex, and Goss recognized Pullins because Pullins had tried to sell him some lamps earlier that day. Accordingly, the showup was reasonably and fairly conducted at or near the time of the offense, and the trial court did not clearly err in finding that Goss's identification of Pullins was reliable. See *Butler*, supra, 290 Ga. at 415-416 (3); *Wallace*, supra, 295 Ga. App. at 455 (1).

Even assuming that the showup here was impermissibly suggestive, based on the fact that Pullins was handcuffed when the officer removed him from the police car, Pullins still had to show that there was a substantial likelihood of irreparable

6

misidentification. See *Butler*, supra, 290 Ga. at 415 (1). In evaluating the likelihood of misidentification, we look to the totality of the circumstances, including the

> opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U. S. 188, 199-200 (III) (93 SCt 375, 34 LE2d 401) (1972).

Considering the totality of the circumstances, including Goss's prior interactions and face-to-face conversation with Pullins, his accurate description of Pullins to police, and the fact that he was positive that Pullins was the man who broke into the victim's apartment, we find no substantial likelihood of misidentification. See *Neil*, supra, 409 U.S. at 201 (III); *Mercer v. State*, 268 Ga. 856, 857 (3) (493 SE2d 921) (1998). Therefore, the trial court did not err in denying Pullins's motion to suppress the pretrial identification.

Finally, "notwithstanding any taint in pretrial identification procedures, a witness' in-court identification may still be admitted if it has an independent origin from the illegal identification procedures involved." (Citations and punctuation omitted.) *Holbrook v. State*, 209 Ga. App. 301, 302 (1) (433 SE2d 616) (1993).

Goss's identification of Pullins was clearly based on his earlier interactions and conversations with Pullins, not on his view of Pullins at the showup. See id. Accordingly, the trial court also did not err in denying Pullins's motion to suppress Goss's in-court identification of him.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*