**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 13, 2014**

# In the Court of Appeals of Georgia

A13A2242. JOHNSON v. THE STATE.                    MI-083C

MILLER, Judge.

Following a jury trial, Kenneth Ray Johnson was convicted of aggravated assault (OCGA § 16-5-21 (a) (2)) and terroristic threats (OCGA §16-11-37 (a)). Johnson appeals from the denial of his motion for new trial, contending that (1) the trial court erred in denying his motion to suppress eyewitness identification; (2) the evidence was insufficient to support his convictions; and (3) he received ineffective assistance of counsel. For the following reasons, we affirm.

Viewed in the light most favorable to conviction,[1] the evidence shows that, at approximately 11:30 on the night of March 2, 2011, the victim and four of his friends went to the Island Breeze night club in Chatham County to see a lip sync contest

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

involving men dressed in women's clothing. The nightclub was located on Montgomery Street between 41st and 43rd streets. At approximately 12:30 to 1:00 the next morning, the victim and his friends left Island Breeze and went to Mr. Wonderful's nightclub.

On the way to the nightclub Johnson walked up behind the victim's friend, Adrien, who was lingering behind the rest of the group. Johnson called Adrien all kinds of slurs, including "faggots, punks, [and] sissies" and said "You're not even a real girl." Johnson and Adrien argued for five to ten minutes, and Adrien told Johnson to get out of his face. Adrien also told Johnson he was calling the police.

Johnson then approached the victim and his friend, "Peaches," who were standing at a corner about a block away. Johnson also told them "You punks wait right here, cause when I come back, I'm going to get my gun and I'm going to shoot you." Johnson smelled like alcohol and marijuana, appeared to be intoxicated, was slurring his speech and was carrying a pool stick case. After about 10 minutes, Johnson left. The victim called the police and told them there was a "dude" walking around with a black case, who made comments to his friends and threatened to shoot them. Adrian also called the police, and gave them a description of Johnson.

Shortly thereafter, the victim was waiting for a cab at a car lot on Montgomery and 40th streets when he saw Johnson walking down the street across from him. Johnson was wearing a black hooded sweatshirt, was carrying a red cup in one hand, and had his other hand behind his back. When Johnson reached the street corner, he hollered to the victim and tried to get the victim's attention. When the victim responded, Johnson said "I told you I was going to come back and shoot one of you all."

The victim told Johnson he was going to call police and then looked down to unlock his phone. When the victim looked back up, Johnson had a silver handgun pointed at him from across the street. Before the victim could unlock his phone, Johnson started shooting at him. The victim ran down the block while Johnson fired about four or five shots at him. One of the shots hit the victim in the back of the leg and exited through his kneecap. The victim then looked back and saw Johnson running down 40th street. Johnson dropped the red cup while he ran.

Meanwhile, a bystander and a couple of people who were driving by called 911. Police responded about five to ten minutes later, and the victim told them what happened. About five minutes later, an ambulance arrived. After the police arrived, Adrian also returned to the scene and saw Johnson walking up the street and looking

around. Johnson was not wearing the same clothes he had worn before. Instead, he was wearing a t-shirt and jeans.

After he saw Johnson, Adrian told police that Johnson was the person that he and the victim were arguing with earlier and the one who threatened to shoot the victim. Johnson was taken into custody by one of the responding officers. After the officer placed Johnson in the back of the officer's vehicle, Johnson told the officer that he was at the scene at the time of the shooting and that he ran away. Johnson said he came back because he dropped his phone at the scene. Shortly thereafter, the officer was advised by a detective to do a show-up. The officer took Johnson out of his vehicle and, with the help of a sergeant, and brought Johnson to the back of the ambulance where the victim identified Johnson as the man who shot him. Johnson's phone was subsequently found across the street from where the victim was shot.

1. Johnson contends that the trial court erred in denying his motion to suppress the pretrial and in-court identification testimony.

"Although a one-on-one show-up identification is inherently suggestive, identification testimony produced from the show-up is not necessarily inadmissible." (Citation and punctuation omitted.) *Butler v. State*, 290 Ga. 412, 414 (3) (721 SE2d 876) (2012). A one-on-one show-up

4

may be permissible in aiding a speedy police investigation and because there were possible doubts as to the identification which needed to be resolved promptly and in order to enhance the accuracy and reliability of identification in order to permit the expeditious relief of innocent subjects. We generally first determine whether the identification procedure was impermissibly suggestive.

(Citations and punctuation omitted.) Id. at 414-415 (3). If the show-up was reasonably and fairly conducted at or near the time of the offense, it is not impermissibly suggestive, and we need not determine whether there was a substantial likelihood of irreparable misidentification. See id. at 415 (3); see also *Wallace v. State*, 295 Ga. App. 452, 454 (1) (671 SE2d 911) (2009).

Here, the evidence showed that officers responded to the scene shortly after the shooting, and Johnson was taken into custody after the victim's friend, Adrian, told police that Johnson was the one who threatened to shoot the victim. Shortly thereafter, officers brought Johnson to the back of the ambulance where the victim identified Johnson as the man who shot him.

The victim had multiple opportunities to see Johnson prior to the show-up, including one conversation during which Johnson and the victim were just a few feet apart on a lighted street, and another encounter during which the victim had enough

5

time to form an opinion that Johnson was intoxicated. Although Johnson was standing across the street when he returned and shot the victim, the victim was positive that Johnson was the man who shot him because Johnson's hood fell off when he ran away and the victim could see Johnson's face. Since the victim had an opportunity to view Johnson at close range on two occasions prior to the shooting and the show-up was conducted at the scene shortly after the shooting, it was not impermissibly suggestive. Accordingly, the trial court did not err in finding that the victim's identification of Johnson was reliable. See *Butler*, supra, 290 Ga. at 415-416 (3); *Wallace*, supra, 295 Ga. App. at 455 (1).

Even assuming that the show-up was impermissibly suggestive,[2] Johnson still had to show that there was a substantial likelihood of irreparable misidentification. See *Butler*, supra, 290 Ga. at 415 (1). In evaluating the likelihood of misidentification, we look to the totality of the circumstances, including

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the

---

[2] We note that the victim testified at the motion to suppress hearing that the people in the ambulance told him that the police had a suspect.

witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U. S. 188, 199-200 (III) (93 SCt 375, 34 LE2d 401) (1972).

Considering the totality of the circumstances, including the victim's prior interactions and face-to-face conversations with Johnson, we find no substantial likelihood of misidentification. See *Neil*, supra, 409 U. S. at 201 (III); *Mercer v. State*, 268 Ga. 856, 857 (3) (493 SE2d 921) (1998). Therefore, the trial court did not err in denying Johnson's motion to suppress the pretrial identification.

Finally, "notwithstanding any taint in pretrial identification procedures, a witness's in-court identification may still be admitted if it has an independent origin from the illegal identification procedures involved." (Citations and punctuation omitted.) *Holbrook v. State*, 209 Ga. App. 301, 302 (1) (433 SE2d 616) (1993). Here, the victim's in-court identification of Johnson was clearly based on his earlier interactions and conversations with Johnson, not on his view of Johnson at the show-up. See id. Accordingly, the trial court also did not err in denying Johnson's motion to suppress the victim's in-court identification of him.

2. Johnson further contends that the evidence was insufficient to support his convictions because the jury's finding of guilt was based solely on the faulty show-up identification. We disagree.

As set forth above, the trial court properly admitted the victim's testimony identifying Johnson as the man who threatened to shoot him early in the morning on March 3, 2011, as well as the victim's testimony that Johnson was the man who returned shortly thereafter and shot him in the back of the leg. Moreover, the victim's friend, Adrian, also identified Johnson as the person who threatened to shoot the victim. The weight and credibility of the victim's and Adrian's testimony was for the jury to decide based on all the facts and circumstances. See *White v. State*, 287 Ga. 713, 715 (1) (b) (699 SE2d 291) (2010). We conclude that the evidence was sufficient for the jury to find Johnson guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, supra, 443 U. S. at 307; see also OCGA §§ 16-5-21 (a) (2) and 16-11-37 (a).

3. Johnson also contends that his trial counsel and first appellate counsel rendered ineffective assistance.

(a) Without citing to any authority, Johnson argues that trial counsel was ineffective in failing to secure an expert on eyewitness identification and that his first appellate counsel was ineffective in failing to preserve this issue. We do not agree.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citation and punctuation omitted.) *Davenport v. State*, 316 Ga. App. 234, 239 (3) (729 SE2d 442) (2012).

> To establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant is required to make an affirmative

9

showing that specifically demonstrates how counsel's failure would have affected the outcome of the case. Absent a proffer of what the testimony of his expert would have been at trial, [Johnson] cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel taken the suggested course.

(Punctuation and footnote omitted.) *Smith v. State*, 303 Ga. App. 831, 835 (4) (695 SE2d 86) (2010). Johnson has failed to show prejudice in this case because he has offered no evidence as to what an expert on eyewitness identification would have opined. Id.; see also *White v. State*, 293 Ga. 635, 636 (2) (748 SE2d 888) (2013). Therefore, he has failed to establish that trial counsel was in effective on this ground, or that appellate counsel was ineffective for failing to preserve the issue.

(b) Johnson argues that trial counsel was ineffective in failing to move for a continuance in order to adequately investigate the case and prepare for trial.[3] We do not agree.

Johnson presented no evidence at the motion for new trial hearing to support his assertion that there was a reasonable probability that the outcome of his trial

---

[3] We reject Johnson's additional contention that first appellate counsel failed to properly preserve this issue, because the transcript of the new trial hearing shows that first appellate counsel questioned trial counsel concerning his investigation and preparation for trial. We also reject Johnson's irrelevant contention that two non-testifying witnesses had criminal records.

would have differed if trial counsel had moved for a continuance. See *Walker v. State*, 288 Ga. 174, 180 (b) (702 SE2d 415) (2010). Notably, at the motion for new trial hearing, trial counsel testified that he reviewed the transcripts from the motion hearing in this case, met with Johnson, and reviewed all the case materials. Trial counsel also had the police officers reports and the witnesses's recorded interviews. Although trial counsel did not know that Adrian was listed as a witness before trial, he stated that he had an opportunity to interview Adrian before he testified. Accordingly, the trial court properly denied Johnson's ineffective assistance of counsel claim on this ground.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*