## A10A1340. AMICA v. THE STATE.

(704 SE2d 831)

DOYLE, Judge.

Following a jury trial, William C. Amica was convicted of possession of marijuana with intent to distribute.[1] He appeals following the denial of his motion for new trial, arguing that the trial court erred by (1) denying his motion to suppress the search warrant, which was issued without probable cause; (2) admitting his statements to the police; and (3) admitting a similar transaction. Amica also contends that he received ineffective assistance of counsel. We affirm, for reasons that follow.

Viewed in favor of the verdict,[2] the evidence shows that the Warner Robins Police Department investigated a May 22, 2006 burglary of a Lolo's convenience store and a May 4, 2006 armed robbery of Jitendra Patel. In January 2007, Detective Brad Mules was contacted by Eric Adams, an inmate at the county jail. Adams told Mules that both he and Amica committed the Lolo's burglary and the armed robbery of Patel and that Amica was surveilling the owner of the Lolo's in order to rob him.[3] On January 18, 2007, Detective Mules obtained a search warrant for Amica's house, where the police recovered a shoe box containing seven plastic bags of marijuana, a digital scale, a nine millimeter magazine with six rounds of ammunition, a pair of brown work boots, and a black sweatshirt, among other items. Amica was later apprehended and taken into custody for questioning.

Prior to trial, Amica moved to suppress the evidence obtained during the search of his house, arguing that the search warrant was stale.[4] The trial court denied the motion. Following his conviction, Amica filed a motion for new trial, raising, inter alia, several arguments with regard to the search warrant. The trial court denied the motion, and this appeal followed.

1. *Search warrant.* Based on the information obtained from Adams, the jail informant, Detective Mules drafted a search warrant affidavit and presented it to the magistrate judge for her consideration. The affidavit listed the address of Amica's residence and stated that the following articles were likely to be recovered therefrom: a 9-millimeter pistol, receipts or documents linked to Lolo's, "dark colored clothing, blue Dickie pants, low-cut Timberland boots,

---

[1] OCGA § 16-13-30 (j) (1).

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] According to Adams, Amica committed the burglary of the Lolo's store, and Adams was the "getaway driver." Adams also told the detective that both Adams and Amica robbed Patel.

[4] This was Amica's sole argument at the motion to suppress hearing and the only specific argument raised in his motion to suppress.

and cash." The affidavit indicated Adams told Mules that Amica "wore the same dark colored sweatshirt [and] blue Dickie pants . . . and had his Luger 9[-millimeter] pistol for both the armed robbery and the burglary." The affidavit also contained Mules's handwritten notes indicating that

> Adams has stated . . . Amica has surveillanced [sic] the owner of Lo-Lo's within the last six weeks[,] prior to Adams'[s] arrest, and Amica is planning to commit an [a]rmed [r]obbery on the [b]usiness owner's home. . . . Prior to Adams'[s] arrest four weeks ago, Adams claims Amica's clothing and weapon are known to be kept in his residence.

Amica makes several arguments regarding the search warrant, affidavit, and inventory. In reviewing his arguments, we are mindful of the following principles reiterated by the Supreme Court of Georgia:

> A search warrant will only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed. The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The trial court may then examine the issue as a first level of review, guided by the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause. A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.[5]

---

[5] (Citations and punctuation omitted.) *State v. Palmer*, 285 Ga. 75, 77-78 (673 SE2d 237) (2009).

On appeal, we

> determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrant, . . . apply[ing] the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of law to undisputed facts is subject to de novo review [and] keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.[6]

(a) Amica argues that the search warrant was not supported by probable cause because the nine-month lapse from the crimes' occurrences in May 2006 rendered stale the information contained in the February 2007 affidavit given in support of the warrant. "While a magistrate must consider time as an element of probable cause when issuing a warrant, the mere passage of time does not equate with staleness."[7]

> The proper procedure for determining if the information relied upon in obtaining a search warrant is stale is to view the totality of the circumstances for indications of the existence of reasonable probability that the conditions referred to in the sworn testimony would continue to exist at the time of the issuance of the search warrant.[8]

Here, the clothing and boots sought in the search warrant were "non-perishable, non-consumable items which were legally possessed and of continuing utility to defendant."[9] They were personal possessions, sought at Amica's residence. The weapon and receipts were not perishable.[10] Reviewing the affidavit in its entirety and giving due deference to the magistrate's finding of probable cause, we cannot say that the information in the affidavit was so remote that it made it unlikely that Amica's clothing and other items sought

---

[6] (Punctuation and footnotes omitted.) *In the Interest of A. Z.*, 301 Ga. App. 524, 526 (1) (687 SE2d 887) (2009).

[7] (Punctuation and footnote omitted.) *Copeland v. State*, 273 Ga. App. 850, 853 (616 SE2d 189) (2005).

[8] (Punctuation omitted.) *Carruthers v. State*, 272 Ga. 306, 313 (5) (528 SE2d 217) (2000), overruled on other grounds, *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008).

[9] *Reeves v. State*, 197 Ga. App. 107, 108 (1) (397 SE2d 601) (1990) (physical precedent only); *Tuzman v. State*, 145 Ga. App. 761, 765 (2) (A) (244 SE2d 882) (1978).

[10] See *Lemon v. State*, 279 Ga. 618, 622 (619 SE2d 613) (2005); *In the Interest of A. Z.*, 301 Ga. App. at 528 (1).

in the warrant would not be in his home at the time the warrant was issued.[11] Thus, the trial court did not err by denying Amica's motion to suppress on this basis.

(b) Amica also argues that the search warrant was not supported by probable cause because Detective Mules improperly failed to disclose certain information to the magistrate. Specifically, Amica contends that the detective omitted the fact that Patel identified his assailants as white and that Amica is black,[12] and that the detective failed to tell the magistrate that the State agreed not to prosecute Adams in exchange for his testimony against Amica. Because Amica did not assert these arguments in his motion to suppress, he has waived them.[13] Notwithstanding his waiver, however, this argument is unavailing.

It is well settled that

an affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause.[14]

[I]f a court determines that an affidavit contains material false representations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause exists to issue a warrant.[15]

Here, the record contains no evidence that the affidavit contained deliberate falsehoods, that Mules made it with reckless disregard for the truth, or that he consciously omitted material

---

[11] See *Carruthers*, 272 Ga. at 313 (5), overruled on other grounds, *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008); *Mitchell v. State*, 239 Ga. 456 (2) (238 SE2d 100) (1977); *In the Interest of A. Z.*, 301 Ga. App. at 528 (1) (b).

[12] We note that Amica has slightly mischaracterized Patel's description. The narrative portion of the report, prepared by Detective Jason Floyd, indicates that Patel was approached by an "unidentified male," who Patel described as "possibly white," who then fled in a vehicle. The second page of the report lists "possible suspects" as two white males.

[13] See *Locher v. State*, 293 Ga. App. 67, 69 (1) (666 SE2d 468) (2008) ("we are limited to reviewing only those grounds ruled upon by the trial court in deciding a motion to suppress") (punctuation omitted); *Allenbrand v. State*, 217 Ga. App. 609, 611 (4) (458 SE2d 382) (1995) ("Defendant's attempt to raise on appeal arguments which were not raised during the motion to suppress or at trial will not be considered.") (punctuation omitted).

[14] (Punctuation omitted.) *Jarrett v. State*, 299 Ga. App. 525, 533 (7) (c) (683 SE2d 116) (2009).

[15] (Punctuation omitted.) *Brown v. State*, 292 Ga. App. 269, 275 (2) (663 SE2d 749) (2008).

information, which, if it had been included in the affidavit, would have been indicative of the absence of probable cause. Nevertheless, Mules clearly should have advised the magistrate that Patel believed that one of the men who robbed him was "possibly white"[16] and that the State declined to prosecute Adams in exchange for his testimony. Even if the omitted information was included in the presentation to the magistrate, however, there is still sufficient information to find probable cause for issuance of the search warrant.[17] Thus, we conclude that Detective Mules's omissions did not invalidate the search warrant.

(c) Relying on *Battle v. State*,[18] Amica contends that the search warrant was facially void because the police failed to leave a copy of the warrant and the affidavit at Amica's residence, and the warrant failed to describe the place to be searched with particularity. Amica did not raise these arguments in his motion to suppress or at trial, and therefore, he has waived them.[19] Notwithstanding his waiver, his arguments are without merit.

Both the Fourth Amendment to the United States Constitution and Art. I, Sec. I, Par. XIII of the Georgia Constitution require that a search warrant "particularly describ[e]" the place to be searched. This requirement is fulfilled "if the warrant contains a description that sufficiently permits a prudent officer executing the warrant to locate the premises, person or property to be searched definitely and with reasonable certainty, and without depending upon his discretion."[20] Here, the search warrant listed the full address of the place to be searched (1364 Blackmon Avenue, Macon, GA 31206), and it contained a heading indicating that the warrant was issued by the Bibb County Magistrate Court. According to Mules, the actual physical location was clearly marked with "easily identifiable" street numbers beside the door, and he agreed that he "had no problem finding 1364 Blackman [sic] Avenue just by knowing the address." Amica has pointed to no evidence that the address was misidentified or easily confused with another location. We further note that the

---

[16] See id. ("Without a doubt, the detectives should have included in the search warrant affidavit, or orally informed the magistrate, that the victim had [racially described] her assailant. . . . Their failure to do so was inexcusable.").

[17] See id.; *Wise v. State*, 257 Ga. App. 211, 212-213 (1) (570 SE2d 656) (2002) (failure to advise the magistrate that the confidential informant was paid for information did not invalidate the search warrant); *Starks v. State*, 240 Ga. App. 346, 347-348 (1) (523 SE2d 397) (1999) (search warrant supported by probable cause even though the police failed to disclose to the magistrate that the informant had pending charges against him and was paid by the police).

[18] 275 Ga. App. 301 (620 SE2d 506) (2005).

[19] See *Locher*, 293 Ga. App. at 68-69 (1).

[20] (Punctuation omitted.) *Franks v. State*, 240 Ga. App. 685, 688 (3) (524 SE2d 545) (1999).

informant had taken Detective Mules to the location prior to the application for the search warrant. Thus, "[w]e find that any prudent officer executing the warrant would be able to locate the premises definitely and with reasonable certainty."[21]

Pursuant to OCGA § 17-5-25, a duplicate copy of any search warrant issued "shall be left with any person from whom any instruments, articles, or things are seized; or, if no person is available, the copy shall be left in a conspicuous place on the premises from which the instruments, articles, or things were seized." Detective Mules clearly testified that he left a copy of the search warrant at the premises searched. This testimony was sufficient to support compliance with OCGA § 17-5-25.[22]

Furthermore, Amica's reliance on *Battle* is misplaced. In that case, we held that

> where a search warrant fails to meet the particularity requirement on its face but instead incorporates a supporting document by reference, failure to leave a copy of that supporting document at the searched premises invalidates the warrant. Where a copy of the affidavit, or other supporting document, is in fact left at the searched premises, the person subject to the search has access to its contents and the purposes of both the warrant itself and the particularity requirement are satisfied.[23]

Amica argues that the authorities failed to leave a copy of the affidavit at his residence. But Detective Mules left a duplicate copy of

---

[21] *Gumina v. State*, 166 Ga. App. 592, 594 (2) (305 SE2d 37) (1983). See *Anderson v. State*, 249 Ga. 132, 135-136 (5) (287 SE2d 195) (1982) (search warrant sufficiently described the specific location of the premises to be searched because it listed the street address, a heading indicating that it was issued by "the Municipal Court of Atlanta, Fulton-DeKalb Counties," and the informant had taken the officers to the search location before applying for a search warrant).

[22] Amica attempts to counter Mules's testimony with the following testimony and argument offered at the motion for new trial: his own testimony that the search warrant executed on January 18, 2007, was not at his house when he returned home on February 2, 2007, after being released from jail; the testimony of Raven Buckner, Amica's girlfriend, that when she arrived at the residence 30 minutes after the search was concluded, the only document her son (who was present during the search) provided her with was the inventory; discrepancies between Detective Mules's testimony that he left the warrant on the living room table and Buckner's testimony that there was no table in the living room; and discrepancies between the inventory left at the residence and the return filed with the magistrate court. Pretermitting whether we can consider such evidence, it is insufficient to overcome Mules's unequivocal testimony that he left a copy of the search warrant at Amica's residence and invalidate the search warrant. See, e.g., *Gordon v. State*, 248 Ga. App. 776, 778 (546 SE2d 925) (2001) (we uphold the trial court's factual findings unless clearly erroneous).

[23] *Battle*, 275 Ga. App. at 303, citing *Groh v. Ramirez*, 540 U. S. 551 (124 SC 1284, 157 LE2d 1068) (2004).

the search warrant at the premises searched, and the warrant identified the specific location with sufficient particularity. Thus, *Battle* has no application to the instant case.

2. *Amica's statement*. Amica further argues that the trial court erred by failing to suppress his statement given to the police while being interrogated at the jail because the authorities failed to inform him of his *Miranda*[24] rights. The trial court held a suppression hearing on this issue, but our review of the record does not reveal a ruling by the trial court. The court did not rule at the conclusion of the hearing, and Amica does not provide a record cite for a written order granting or denying the motion to suppress on this basis. This Court is an appellate court for the correction of errors of law made by the trial court, which have as their bases "specific ruling[s] made by the trial court."[25] Thus, in the absence of a ruling by the trial court, this enumeration presents nothing for this Court to review.

Moreover, it does not appear that Amica's statement was entered into evidence at trial, and Amica provides no record citation to the contrary. Thus, even assuming that Amica's contention that his statement was inadmissible is true, Amica "must show harm as well as error to warrant reversal. No harm can be shown [because] no statements were entered into evidence."[26]

3. *Similar transaction*. Over Amica's objection, the trial court admitted evidence that police found five small baggies containing marijuana on Amica's person during a pat-down search as part of a traffic stop, which occurred on February 23, 2007 in Macon, slightly more than a month after he was arrested in the instant case.

(a) Amica contends that the trial court erred by admitting evidence of the February 23, 2007 arrest. We disagree.

Before evidence of an independent offense may be admitted at trial, the State must establish:

> (1) that it seeks to introduce the evidence not to raise an improper inference as to the defendant's character but for some proper purpose; (2) that there is sufficient evidence to establish that the defendant committed the independent offense; and (3) that there is a sufficient connection or similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.[27]

---

[24] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[25] *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999).

[26] (Citation omitted.) *Peters v. State*, 210 Ga. App. 211, 212 (2) (435 SE2d 731) (1993).

[27] *Williamson v. State*, 300 Ga. App. 538, 541 (2) (685 SE2d 784) (2009).

"We review the trial court's determination that the similar transaction evidence was admissible under an abuse of discretion standard. Independent crimes are admissible to show motive, intent, plan, identity, bent of mind or course of conduct."[28]

Here, the State sought to introduce the similar transaction to show "either intent, identity, and/or plan and schemes," which are proper purposes. The testimony of the arresting officer from the similar transaction was sufficient to establish that Amica committed the instant offense.[29] And the trial court did not abuse its discretion in finding that the offenses were sufficiently similar. In both transactions, Amica possessed marijuana packaged in individual, small plastic bags. Amica's argument that the circumstances were not identical is unpersuasive. "While there are differences between the two offenses, the proper focus is on the similarities, not the differences, between them."[30] "Accordingly, we agree with the trial court's conclusion that there was sufficient connection between the [subsequent] incidents and the offense charged to warrant their admission."[31]

(b) Amica also contends that "[t]he trial court erred by finding the traffic stop [in the similar transaction] constitutional." This enumeration is without merit.

At the similar transaction hearing, the officer who stopped Amica on February 23, 2007, testified that he initiated a traffic stop because the tag light on the vehicle Amica was driving was "hanging defectively" and not properly illuminating the license plate. Once the officer observed this traffic violation, he was authorized to make a traffic stop.

> The United States Supreme Court has held that when an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances.[32]

---

[28] (Punctuation and footnote omitted.) Id. at 542 (2) (b).

[29] See id.

[30] Id. at 543 (2) (b).

[31] *Wells v. State*, 237 Ga. App. 109, 113 (4) (514 SE2d 245) (1999). See *Williamson*, 300 Ga. App. at 542-543 (2) (b); *Duque v. State*, 228 Ga. App. 391, 392 (2) (491 SE2d 841) (1997) (affirming admission of similar transaction evidence because it involved the defendant's possession of numerous small baggies of crack cocaine, which is the same drug and drug packaging he allegedly possessed in the instant charge).

[32] (Punctuation omitted). *Wrigley v. State*, 248 Ga. App. 387, 393 (5) (546 SE2d 794) (2001), citing *Whren v. United States*, 517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996).

Thus, given the evidence presented at the similar transaction hearing, the trial court did not err in admitting the similar transaction evidence.[33]

Challenging the officer's testimony that the tag light was not properly functioning, Amica relies on testimony offered at the hearing on his motion for new trial. Specifically, Amica points to his testimony and that of his girlfriend, Buckner, that the tag light was not defective at the time of the traffic stop. This evidence was not before the trial court at the time it ruled on the motion in limine to exclude the similar transaction. Pretermitting whether we can consider the testimony on appeal, however, this argument presents no basis for reversal because the trial court considered it and apparently rejected it.[34]

4. *Ineffective assistance of counsel.* In his final enumeration, Amica contends that his trial counsel was ineffective, alleging four deficiencies.

> To establish ineffective assistance of counsel under *Strickland v. Washington*,[35] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.[36]

To prevail on his claim, Amica must

> rebut the strong presumption that his lawyer's conduct falls within the wide range of reasonable professional assistance. As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous.[37]

(a) Amica contends that his trial counsel rendered ineffective assistance by failing to adequately investigate the condition of the tag light that formed the basis for the traffic stop in the similar transaction, pointing to his and Buckner's testimony presented at

---

[33] See *Wrigley*, 248 Ga. App. at 393 (5).

[34] See *Soilberry v. State*, 282 Ga. App. 161, 162 (1) (637 SE2d 861) (2006) (we accept the trial court's credibility determinations unless clearly erroneous).

[35] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[36] (Punctuation omitted.) *Johnson v. State*, 302 Ga. App. 318, 325-326 (7) (690 SE2d 683) (2010).

[37] (Citations and punctuation omitted.) Id. at 326 (7).

the motion for new trial hearing that the tag light was fully operational at the time of the stop. We disagree.

At the hearing, trial counsel testified that he would have investigated the traffic stop further, if he had any indication that the tag light was operational at the time of the traffic stop. Neither Amica nor his girlfriend told trial counsel that the light was working at the time of the stop, and therefore, trial counsel was not ineffective for failing to investigate the tag light.[38]

(b) Amica alleges that his trial counsel rendered ineffective assistance by failing to object to bad character evidence. During the trial, the officer who initiated the traffic stop during the similar transaction testified that when he saw Amica, the officer "realized that [he] had known [Amica] before." At the hearing on the motion for new trial, trial counsel testified that the officer's testimony was

> not the type of thing I would object to, to kind of put big, flashing neon lights about this officer knowing my client for the jury. It's kind of — I wouldn't call it an innocuous statement; it was kind of a statement that goes by very quickly that I didn't — wouldn't necessarily want to high-light it by jumping up and objecting to it.

"As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[39] "Moreover, even if [Amica's] trial counsel had objected to the officer's testimony, his objection would have been futile. Testimony that a defendant is known to the police does not impermissibly place the defendant's character into issue."[40]

(c) Amica further contends that trial counsel was deficient because he "failed to bring forth any discrepancies in the search warrant to the attention of the court during the motion to suppress." As we concluded in Divisions (1) (b) and (1) (c), Amica's arguments regarding the search warrant are without merit.[41] "[F]ailure to make

---

[38] See *Kelley v. State*, 295 Ga. App. 663, 665-666 (2) (a) (673 SE2d 63) (2009) (trial counsel's performance cannot be deemed deficient because he failed to present the testimony of witnesses about which he had no knowledge), citing *Callaway v. State*, 247 Ga. App. 310, 320 (6) (a) (542 SE2d 596) (2000) ("A client cannot simply withhold relevant information within his knowledge, of which his attorney would have no reason to be aware, and then claim that the attorney was ineffective for failing to discover such information on his own.").

[39] *Collins v. State*, 300 Ga. App. 657, 659 (686 SE2d 305) (2009).

[40] (Punctuation omitted.) *Johnson*, 302 Ga. App. at 327 (7) (b).

[41] We similarly reject Amica's argument regarding the discrepancies between the inventory left at his residence and the official return filed with the court. See OCGA § 17-5-31 ("No search warrant shall be quashed or evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused."); *Manemann v. State*, 147 Ga. App. 747 (1) (250 SE2d 164) (1978) ("[T]he making and filing of an inventory is merely a ministerial act not

a meritless argument does not constitute ineffective assistance of counsel."[42]

(d) Finally, Amica argues that trial counsel rendered ineffective assistance by entering into a stipulation regarding Detective Mules's testimony. Prior to trial, counsel agreed that Mules could explain his presence at Amica's residence by testifying that he was investigating incidents or offenses in his jurisdiction, without mentioning that he suspected that Amica was involved in the previous armed robbery or burglary or even that such other crimes occurred. Trial counsel's stipulation was not deficient. Mules's testimony did not implicate Amica in another crime. Even if it did, however, "[a]ll circumstances surrounding an arrest are admissible for whatever value the jury desires to place on them. Where evidence may incidentally put character in issue or be prejudicial it may be admitted if otherwise relevant."[43]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 19, 2010 —
RECONSIDERATION DENIED DECEMBER 2, 2010 — 

*Bernadette C. Crucilla*, for appellant.
*Howard Z. Simms, District Attorney, Neil A. Halvorson, Assistant District Attorney*, for appellee.

---

affecting the substantive rights of the accused.").
[42] *McCoy v. State*, 285 Ga. App. 246, 249 (4) (b) (645 SE2d 728) (2007).
[43] (Punctuation omitted.) *Smith v. State*, 285 Ga. App. 399, 401 (2) (646 SE2d 499) (2007).