**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 21, 2018**

# In the Court of Appeals of Georgia

A17A1550. WINN v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Nikita Tayaneka Winn appeals from his convictions for possession of cocaine with intent to distribute, trafficking in illegal drugs (heroin), and possession of a firearm by a convicted felon. On appeal, Winn contends that the evidence was insufficient to sustain his convictions, the trial court erred in denying his motion to suppress because the affidavit for the search warrant was not supported by probable cause, consent to search was given by an unauthorized person, and his trial counsel was ineffective. Winn also contends that the trial court violated OCGA § 17-8-57 by informing jurors that "What the DA says is true." Following our review and consideration of the alleged errors, we affirm.

1. Winn first contends that the evidence was insufficient to sustain his convictions. He asserts that the evidence did not establish that he had possession of the drugs or firearm. We disagree.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979) and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

So viewed, the evidence demonstrates that upon receiving a complaint from the complex manager of the Crestmont Apartments about the presence of drug paraphernalia in the parking lot near Apartment 413, the Crime Interdiction Narcotics Unit of the City of Marietta Police Department ("CIU") assigned an undercover agent to surveil the building. They had been given a description of the resident of Apartment 413, and as the agent observed the building, he saw a female matching the description leave the apartment, get into the driver's seat of a parked car for a few minutes, and then return to the apartment. The supervising officer of CIU and the agent met with the complex leasing manager who identified the leaseholder as Courtney Tench, and who said that she had received numerous complaints from other

apartment residents in building 400 that Tench had people coming and going at all hours and that "cars [were] pulling up, staying for just a few minutes and leaving." A maintenance worker showed the officers needles in a bucket that he had picked up from around building 400; some of the needles contained brown liquid or bloody residue.

As they walked back to the leasing office, the officers saw a former confidential informant ("CI") walk from the breeze way of Building 400 to a nearby dumpster while talking on his cell-phone. The CI was a known heroin user and did not live at the apartment complex. The agent spoke with the CI, who admitted that he had gone to Apartment 413 to purchase drugs from "Kino." During this time, a man came out of Apartment 413 and walked toward the dumpster. When he saw the officers, he threw a plastic bag that he was carrying into the dumpster and walked away. The officer stopped the man, who said that his name was "Kino Smith." "Kino," who was later identified as Winn, consented to a search of his person, and the officer discovered a soft-ball size roll of money, most of it in smaller denominations. The officer took the former CI's cell-phone and hit send, and Winn's cell-phone rang. The former CI said that when he had gone to the apartment to purchase drugs, a man

3

inside the apartment instructed him to wait by the dumpster. An officer attempted to locate the plastic bag that was tossed in the dumpster, but stopped for safety reasons.

Winn was placed in the patrol vehicle while officers conducted a "knock-and-talk" at Apartment 413. Trench answered the door and permitted the officers to enter. A male and two other females were present in the apartment. Trench told officer that she lived there with "Kino" (Winn), and that he paid her $400 a month to stay in the second bedroom. She consented to a search of her master bedroom and the common areas. The door to the second bedroom, where Winn stayed, was opened and police saw a black handgun and green leafy substance on the floor, and other drug paraphernalia. Based on their observations and the earlier interaction with Winn, officers obtained a search warrant for Winn's bedroom and recovered, in addition to the drug evidence they saw earlier, a black chest containing heroin, marijuana, cocaine and a black digital scale.[1] They also discovered a bag containing close to 200 hypodermic needles. The room also contained a cell-phone contract in the name of "Kino Smith," a driver's license in the name of "Jeffrey Brookings," and men's clothing in Winn's size. Winn had initially told police that his name was "Kino

---

[1] The net weight of the cocaine was 27.73 grams and the weight of the heroin was 30.20 grams.

Smith," then "Jeffrey Brookings," but when he was arrested and booked, it was discovered that his legal name was Nikita Winn.

On appeal, Winn contends that there was insufficient evidence of his possession of the drugs and firearm. We do not agree.

> Where the [S]tate provides no direct evidence of actual possession, a conviction may be sustained with proof of constructive possession. A finding of constructive possession must be based upon some connection between the defendant and the contraband other than mere spatial proximity. Constructive possession exists where a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing. If the [S]tate presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband. Although this presumption may be rebutted by showing that others had access to the premises, the equal access doctrine applies to rebut the presumption of possession only where the sole evidence of possession of contraband found on the premises is the defendant's ownership or possession of the premises. . . . [A]lthough mere presence at the scene is not sufficient to convict one of being a party to a crime criminal intent may be inferred from conduct before, during, and after the commission of a crime.

(Footnotes and punctuation omitted.) *Johnson v. State*, 338 Ga. App. 500, 502 (790 SE2d 291) (2016). "As long as there is slight evidence of access, power, and

5

intention to exercise control or dominion over the contraband, the question of fact regarding constructive possession remains within the domain of the trier of fact." (Footnote and punctuation omitted.) *Ferrell v. State*, 312 Ga. App. 122, 124 (1) (717 SE2d 705) (2011).

Here, contrary to Winn's contention, there was evidence of his constructive possession of the drugs and firearm beyond his mere presence in the bedroom from which the jury could find beyond a reasonable doubt that he had access, power, and intention to exercise dominion or control over the drugs and firearm found in his room. See *Howard v. State*, 291 Ga. App. 386, 388 (662 SE2d 203) (2008) (for a conviction based on circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury.") (citation, punctuation, and emphasis omitted).

2. Winn contends that the trial court erred in denying his motion to suppress because the warrant affidavit contained false statements without which the warrant was unsupported by probable cause. He asserts that the search warrant contained

6

several false statements, including, the admittedly false statement that Winn "was found on the property, in which he claims he does not live, attempting to make a drug transaction with several young white females." He also contends that the statement in the warrant that the items in the second bedroom were visible "through the open door...in plain view from the living room"directly conflicted with the officer's testimony at a probable cause hearing that he had pushed open the door. Winn asserts that without these false statements there was no probable cause shown in the affidavit to support the issuance of the search warrant and, thus the trial court should have granted his motion to suppress. We do not agree.

A magistrate may issue a search warrant only when the circumstances set forth in the affidavit establish probable cause that contraband or evidence of a crime will be found in a particular place. *State v. Palmer*, 285 Ga. 75, 77-78 (673 SE2d 237) (2009). On appeal, we must determine whether the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrant. *Amica v. State*, 307 Ga. App. 276, 278 (1) (704 SE2d 831) (2010). "[D]oubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper." (Citation and punctuation omitted.) *Sullivan v. State*, 284 Ga. 358, 361 (2) (667 SE2d 32) (2008).

In reviewing the trial court's grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

(Citations and punctuation omitted.) *Palmer*, 285 Ga. at 78.

[A]n affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause. If a court determines that an affidavit contains material false representations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause exists to issue a warrant.

(Footnotes and punctuation omitted.) *Amica*, 307 Ga. App. at 279 (1) (b).

Here the affidavit's narrative provided in pertinent part that:

While conducting a drug investigation at 500 Williams Dr, Marietta, GA 30052 CIU Agents came in contact with a suspected drug dealer, Kino Smith. Smith was found on the property, in which he claims he does not live, attempting to make a drug transaction with several young white females. The transaction was interrupted by CIU agents. . . . [A]gents

8

were directed to [apartment 413] where the young white females believed Smith to be residing. Agents made contact with the leaseholder, [Tench].. . .Tench allowed CIU agents into the apartment. [The Agent] asked Tench if Smith lived in the apartment. Tench advised that he was renting a room from her. [The Agent] then asked Tench which room Smith was renting. Tench advised the front bedroom to the right of the front door. [The Agent] directed his attention to this room and through the open door was able to see a digital scale with suspected heroin residue, a small black handgun, and a white sheet of paper with suspected marijuana on it. All the items were in plain view from the living room without the need to go into the bedroom.

The State concedes that the information in the affidavit describing a drug interaction between Winn and the females was false. When questioned at the hearing on the motion to suppress and at trial about the inaccuracy, the affiant, an officer who had been orally given the information by the CIU agent, testified that he had misinterpreted the transaction and assumed that the females at the scene were involved in the drug transaction, and that he had not intentionally omitted the information about the CI. He further testified that he was not present when the CIU agent interrupted the drug transaction between Winn and the CI.[2]

---

[2] The probable cause hearing at which the officer made the purportedly contradictory statement that he had pushed opened the bedroom door, rather than the items being visible through the open bedroom door, is not included with the record,

9

Here, "[w]e need not — and thus do not — decide whether any of these false statements were made knowingly and intentionally or with reckless disregard for the truth, because the rest of the information contained in the affidavit — which [Winn] does not challenge — establishes probable cause[.]" *Taylor v. State*, 337 Ga. App. 486, 488-489 (788 SE2d 97) (2016). Even though the information from the officer about Winn's transaction with the females was false, if this information was excluded from the affidavit and the actual transaction between Winn and the CI included, this, along with the remaining information in the affidavit, would have been sufficient to provide the magistrate with a basis to find probable cause. See *Palmer*, 285 Ga. at 78.

Because the warrant affidavit had sufficient information to establish probable cause, the trial court did not err in denying Winn's motion to suppress.

3. Winn next contends that Tench, the leaseholder, did not have authority to consent to a search of Winn's bedroom. However, this claim is meritless, because the search of Winn's bedroom was not authorized by Tench's consent, but was properly conducted under the search warrant.

_____

nor did Winn question the officer at the motion to suppress hearing or at trial about the inconsistency.

10

4. Winn enumerates as error the trial court's denial of his motion for new trial based on the ineffectiveness of his trial counsel. He contends that trial counsel was ineffective for failing to object or move to strike certain testimony that Winn asserts was inadmissable as hearsay. We do not agree.

> To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy either the deficient performance or the prejudice prong of the *Strickland* [*v. Washington*, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984)] test, this Court is not required to examine the other.

(Citations and punctuation omitted.) *Hassell v. State*, 294 Ga. 834, 837-838 (2) (755 SE2d 134) (2014).

11

Winn complains that the agent's testimony that the CI told him that he was at the apartment to buy drugs, that Tench had told him that she was trading sex for drugs, and that there were text messages on Trench and Winn's cell phone about the sexual favors were inadmissible hearsay and trial counsel was ineffective for failing to object to the testimony. Winn also contends that trial counsel was ineffective for failing to object to another officer's testimony that he had heard that Winn was the occupant of the room that was searched in the apartment.

Upon our review of Winn's claims, we find that he failed to satisfy either the deficient performance or the prejudice prong of the *Strickland*.

At the motion for new trial hearing, trial counsel testified that he did not object to the agent's testimony about the CI purchasing drugs from Winn because he thought it was admissible because the CI had testified to the same fact at trial. He also testified that his decision to not object to the testimony about the purported sexual favors was part of his overall trial strategy to show that Winn was arrested because the officer believed Winn was trading drugs for sex even though Trench denied that the two had exchanged sex for drugs. A tactical decision such as whether to object falls within the ambit of reasonable trial strategy. See *Wright v. State*, 274 Ga. 730, 732 (2) (b) (559 SE2d 437) (2002). See also *Butler v. State*, 273 Ga. 380 (541 SE2d

12

653) (2001) (the decision whether to object is a generally a question of trial strategy that does not constitute ineffective assistance).

Winn's contention trial counsel was ineffective for failing to object to the agent's testimony about the text message, is also meritless. Although trial counsel testified that he could not recall why he did not object to or move to strike the testimony, Winn does not demonstrate how he was prejudiced by this testimony which was cumulative of other testimony. See *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) ("If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.")

Lastly, trial counsel was not questioned about his failure to object to an officer's testimony that he heard that Winn was the occupant of the searched room. In the absence of testimony by counsel about the alleged error, it is presumed strategic. *Tyner v. State*, 313 Ga. App. 557, 565 (6) (c) (722 SE2d 177) (2012). Again, Winn has the burden of establishing ineffectiveness of trial counsel under either *Strickland* prong, and he has not done so. Id.

Accordingly, the trial court did not err in denying Winn's motion for new trial based on his ineffectiveness claim.

13

5. Winn contends that the trial court violated OCGA § 17-8-57 by instructing a witness that the "What the DA says is true." That code section, at the time of Winn's January 2015 trial, provided:

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give prohibits a trial judge in a criminal case from expressing or intimating during the progress of the case or in the jury charge his or her opinion as to what has been proved or as to the guilt of the accused.[3]

Under former OCGA § 17-8-57, counsel was not required to object to an allegedly improper comment by the trial judge in order to preserve the error for appellate review. The current version of OCGA § 17-8-57,

> provides that it is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the

---

[3] Former OCGA § 17-8-57 (2014). Effective July 1, 2015, the statute was amended. *Quiller v. State*, 338 Ga. App. 206, 207 (789 SE2d 391) (2016) (citing 2015 Ga. L., p. 1050, § 1).

14

accused. And that , the defendant's trial counsel must timely object to a suspected violation of the statute and must inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence. Otherwise, appellate review will be limited to whether the judge's comments violated the statute and, if so, whether the violation constituted plain error that affected the substantive rights of the parties.

(Footnote and punctuation omitted.) *Whatley v. State*, 342 Ga. App. 796, 808 (3) (f) (805 SE2d 599) (2017). "Because OCGA § 17-8-57 is a procedural law and it does not provide otherwise, the appellate courts will apply the law as it exists at the time the appeal is decided. Thus, the current version of OCGA § 17-8-57 applies in this case." (Citation omitted.) Id. at 808 (3) (f) n. 44.

During the State's direct examination of the CI, the CI refused to answer a question, instead asserting that he was "just going to plead the Fifth." The State requested that the trial court instruct the CI that he had "use immunity for the course of this trial." The trial court responded that, "You need to answer the question. What the DA says is true." Winn's trial attorney did not object.

The trial court's statement here, when considered in context, did not express or intimate such an opinion. The trial court's comment was essentially a ruling on a point of law– the inability to plead the Fifth Amendment after being granted use

15

immunity. See *Rogers v. State*, 294 Ga. App. 195, 196 (1) (670 SE2d 106) (2008) ("A ruling by the court on a point of law is not an expression of opinion; neither are remarks by the court explaining the court's rulings.") (punctuation and footnote omitted.)

"Although we strongly discourage the giving of direction or the use of language that could create the appearance of alignment between the trial court and either the prosecution or defense, [here] the trial court did not express or intimate its opinion as to what has or has not been proved so as to violate OCGA § 17-8-57." (Citation and punctuation omitted.) *Allen v. State*, 296 Ga. 785, 789 (6) (770 SE2d 824) (2015).

Thus, this enumeration fails.

*Judgment affirmed. McMillian and Mercier, JJ., concur.*