**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 26, 2025**

# In the Court of Appeals of Georgia

A25A0025, A25A0277. SULLENS v. THE STATE (two cases).

PER CURIAM.

A jury found father and son Timothy and Levi Sullens guilty of several wildlife offenses. Both now appeal — Timothy in Case No. A25A0025 and Levi in Case No. A25A0277 — challenging the sufficiency of the evidence to support their convictions. For the reasons that follow, we conclude that neither appellant has met his burden of establishing trial court error, and we therefore affirm the convictions in both cases.

"On appeal from a criminal conviction, [we view the evidence] in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of

innocence."[1] So viewed, the evidence shows that, on August 5, 2019, Levi was driving a truck in which Brandon Reed and Timothy were passengers, "riding around looking for deer," when Levi directed the headlights of the vehicle toward several deer in a residential yard in Hall County.

On the night of November 7, 2019, Reed was driving a truck in which Timothy was a passenger when they saw a deer on the side of the road in Hall County. Reed shot the deer from his truck, and he and Timothy later returned in Timothy's van to retrieve the carcass.

Sometime around or shortly after midnight on November 19, 2019, Zach Sullens was driving a car in which Reed was a passenger, when Reed shot another deer from the vehicle while the vehicle was on Jim Crow Road in Hall County. Reed thereafter called Levi, who traveled to that location to help retrieve the carcass. There is no indication that anyone reported the killing to state authorities.[2]

At trial, a game warden testified that cell phone tower mapping data showed that Reed's cell phone traveled from the place where he shot the deer on Jim Crow

---

[1] (Punctuation omitted.) *Krauss v. State*, 263 Ga. App. 488, 488 (1) (588 SE2d 239) (2003).

[2] See Ga. Comp. R. & Regs., r. 391-4-2-.03 (2) (2019) (reporting requirements).

Road that night, to Timothy's residence between 12:20 a.m. and 1:46 a.m. that morning. Moreover, Levi's cell phone indicated that he traveled from Timothy's residence to Jim Crow Road and then back to Timothy's residence between 12:13 a.m. and 1:07 a.m. that same morning. In addition, at some point that day, Levi shot a doe in Hall County but also did not report the killing to state authorities.[3]

On November 24, 2019, Reed again was driving a truck in which Timothy was a passenger, when they saw a deer on the side of the road in Hall County. Reed shot the deer from the truck while it was on the road. Reed, Timothy, and Zach later returned in Reed's grandmother's truck, at which point Timothy pulled the deer carcass to the road, and the three took it to Timothy's home.

A jury found Timothy guilty of one count each of disturbing wildlife habitats, hunting from a motor vehicle, and unlawful possession of wildlife, while the trial court directed a verdict of acquittal on a charge of hunting from a public road. In addition, the jury found Levi guilty of one count of unlawful possession of wildlife and two counts of violating recording and reporting requirements for game animals and birds,

---

[3] See id.

while the court directed a verdict of acquittal on charges of hunting from a motor vehicle, hunting on a public road, and hunting deer at night. These appeals followed.

"When a criminal defendant challenges the sufficiency of the evidence supporting his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[4] "[A]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the trier of fact's verdict will be upheld."[5]

*Case No. A25A0025*

1. Timothy has abandoned his brief, conclusory claim that the trial court erred by failing to exercise its discretion as the "thirteenth juror," as he has failed to cite any

---

[4] (Punctuation omitted.) *Galvan v. State*, 330 Ga. App. 589, 592 (1) (768 SE2d 773) (2015); see also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[5] (Punctuation omitted.) *Evans v. State*, 315 Ga. App. 863, 864 (729 SE2d 31) (2012).

legal authority or portions of the record in support of it, pretermitting whether he also waived the claim by failing to raise it in a motion for a new trial.[6]

2. While Timothy purports to challenge the sufficiency of the evidence to support his convictions, he raises only one argument in that regard: that a game warden who investigated the offenses lacked reasonable suspicion or probable cause when he entered and searched Timothy's property, as a result of which "all evidence" against him was the "fruit of the poisonous tree" and therefore could not

---

[6] See *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citations and punctuation omitted). See also Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."), (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration."); *Colclough v. Dept. of Human Svcs.*, 367 Ga. App. 567, 570 (1) (887 SE2d 407) (2023) ("It is the appellant's burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal.") (punctuation omitted). See also generally *Buchanan v. State*, 357 Ga. App. 865, 865, 867-868 (2) (852 SE2d 317) (2020) (concluding that the defendant waived any argument as to the trial court's failure to exercise its discretion as the thirteenth juror by acquiescing in the court's decision not to consider that ground in his motion for a new trial).

have formed the basis for his convictions.[7] Any claim that evidence in this case should have been excluded as the fruit of an illegal search, however, is not properly before us because Timothy did not move in the trial court to suppress the results of any searches at issue in this case.[8] Consequently, we affirm Timothy's convictions in Case No. A25A0025.

---

[7] Both Timothy and Levi have abandoned their brief, passing, conclusory challenges to the accuracy of evidence establishing the locations of various cell phones when the offenses were committed, as they have not cited any legal authority or record evidence (other than a single trial transcript page on which cell-phone data is not mentioned) in support of them. See Court of Appeals Rule 25 (d) (1), (d) (1) (i); *Colclough*, 367 Ga. App. at 570 (1); *Brittain*, 329 Ga. App. at 704 (4) (a).

[8] See *Ruffin v. State*, 201 Ga. App. 792, 792 (1) (412 SE2d 850) (1991) (holding that the failure to file a timely motion to suppress evidence under OCGA § 17-5-30 "constitutes a waiver of the constitutional guarantee with respect to the search and seizure in question") (punctuation omitted). Accord *Nelson v. State*, 305 Ga. App. 65, 66 (1) (699 SE2d 66) (2010) (concluding that a defendant's oral objections to the admission of certain evidence at trial were insufficient to preserve for appellate review his claim that the evidence was seized in violation of the Fourth Amendment because he did not file a written motion to suppress the evidence before the trial court). See also generally *Amica v. State*, 307 Ga. App. 276, 282 (2) (704 SE2d 831) (2010) ("This Court is an appellate court for the correction of errors of law made by the trial court, which have as their bases specific rulings made by the trial court.") (citation and punctuation omitted).

*Case No. A25A0277*

3. Because Levi also did not file a motion to suppress, his claim that the game warden lacked reasonable suspicion or probable cause to enter and search Timothy's property provides nothing for us to review for the reasons stated in Division 2,[9] pretermitting whether Levi would have standing to challenge the search given the facts of this case.[10]

4. We now turn to Levi's challenges to the sufficiency of the evidence to support his convictions. As relevant to this appeal, he was charged with three offenses alleged to have occurred on November 19, 2019: unlawful possession of wildlife (Count 33) and violating recording and reporting requirements for game animals (Counts 36 and 37). As charged in Count 33, it is unlawful for "any person to . . . possess any wildlife . . . which he knows or reasonably should have known ha[s] been

---

[9] See *Nelson*, 305 Ga. App. at 66 (1); *Ruffin*, 201 Ga. App. at 792 (1). See also *Amica*, 307 Ga. App. at 282 (2).

[10] See generally *Hampton v. State*, 295 Ga. 665, 669 (2) (763 SE2d 467) (2014) ("[R]ights under the Fourth Amendment are personal, and in order to challenge the validity of a government search an individual must actually enjoy the reasonable expectation of privacy, that is, the individual must have standing."); *Lewis v. State*, 233 Ga. App. 560, 562 (2) (504 SE2d 732) (1998) (affirming the denial of a motion to suppress because there was no evidence that the defendant "asserted a possessory or proprietary interest in the premises" at issue).

taken or possessed contrary to any of the wildlife laws."[11] This count of Levi's accusation alleged that he "unlawfully possess[ed] deer, a wildlife which he reasonably should have known was possessed contrary to [OCGA § 27-1-3] by hunting deer at night from a public roadway." As relevant here, OCGA § 27-1-3 (f) makes it unlawful to hunt "except in accordance with such legal methods and weapons and except at such times and places as may be established by law." And OCGA § 27-3-10 (a) criminalizes hunting while on a public road and discharging a weapon while hunting from a public road, while OCGA § 27-3-48 (a) criminalizes hunting deer at night.

As charged in Counts 36 and 37, it is unlawful to remove the carcass of a game animal from the place one killed it or to transport the carcass of a game animal killed by another "[e]xcept in compliance with all applicable rules and regulations of the [Board of Natural Resources] regarding required harvest recording and reporting."[12] The applicable Georgia Code definition of "[g]ame animals" includes deer.[13] And a state regulation in effect in 2019 required each deer harvest to be reported to the

---

[11] OCGA § 27-1-31 (a).

[12] OCGA § 27-3-29 (b) (1); see OCGA § 27-1-2 (7) (defining "Board").

[13] See OCGA § 27-1-2 (34).

Department of Natural Resources within 72 hours of carcass recovery.[14] Count 37 of Levi's accusation alleged that he "harvest[ed] an 8 point buck and did not record the harvest as required by law."[15] While the term "harvest" does not appear to be defined by statute or regulation, the Merriam-Webster online dictionary defines it, in relevant part, as "to gather, catch, hunt, or kill (salmon, oysters, deer, etc.) for human use, sport, or population control."[16]

(a) Levi contends that "[n]o evidence was presented that [he] knew anything about the deer he allegedly retrieved for . . . Reed except for Reed's truck had broken down and [he] needed assistance getting the deer brought to his father's residence[ ]," presumably on November 19, 2019, which appears to be the only date on which he is alleged to have retrieved a deer carcass for Reed. But regardless of whether he believed Reed's truck "had broken down," the jury was authorized to infer that Levi knew that Reed unlawfully shot the deer at night based on: (i) Reed's testimony that

---

[14] See Ga. Comp. R. & Regs., r. 391-4-2-.03 (2) (2019).

[15] Levi raises no arguments as to the sufficiency of the evidence to support his conviction for Count 36, which alleged that he shot a doe on November 19, 2019, and failed to report the killing.

[16] Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/harvest (last updated Mar. 3, 2025).

he called Levi for assistance after shooting the deer that night; (ii) the cell phone tower mapping data showing that Levi traveled to Reed's location between midnight and 1:00 a.m. on November 19, 2019; (iii) testimony by Reed that he had hunted at night with both Levi and Timothy; and (iv) a game warden's similar testimony that Reed said that he "had been doing a good bit of night hunting in the area" with Levi, Timothy, and Zach. We therefore find no merit to this argument.

(b) Levi further maintains that he "did not kill [ ]or harvest the . . . deer [that was shot] on November 19th and therefore was under no duty to tag or register[ ] the wildlife."[17] But the deer harvest reporting requirements apply not only to persons who kill deer, but also to persons who transport the carcass of a deer killed by another.[18] Thus, under the plain statutory language, both Reed and Levi bore responsibility for ensuring that the reporting requirements were met as to deer killed by one and transported by the other. We therefore also find no merit to this argument.

---

[17] We presume that this contention refers to Count 37, as Count 36 alleged that Levi personally shot a doe.

[18] OCGA §§ 27-1-2 (34); 27-3-29 (b) (1). See also generally OCGA § 27-1-2 (39) (defining "Hunting" to include "every act of assistance to any person in taking or attempting to take . . . wildlife").

(c) Finally, Levi characterizes as "clearly . . . implausible" a game warden's testimony that law enforcement seized certain evidence from Timothy's garage but left behind a deer carcass that had been found lying in plain view in the entrance to the garage. Regardless of whether there is any merit to this argument, however, Levi does not explain how the claim, even if true, has any bearing on whether there was sufficient other evidence for the jury to find him guilty of the counts of which he was convicted. To the extent that the challenged testimony gave rise to credibility issues or inconsistencies in the evidence, the jury — as it apparently did — was free to resolve any such discrepancies in the State's favor.[19] And to the extent that Levi's claim in this regard implicates the propriety of the search of Timothy's residence or

---

[19] See *Browner v. State*, 296 Ga. 138, 141 (1) (765 SE2d 348) (2014) ("Resolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court," and the trier of fact is not required to accept the defense presented by the defendant). Accord *Duncan v. State*, 183 Ga. App. 368, 370 (4) (358 SE2d 910) (1987) (explaining that even if there is a "sharp conflict in the evidence, the weight of the evidence and credibility of witnesses are questions for the triers of fact.") (punctuation omitted).

garage, Levi has waived any such challenge for the reasons stated in Division 3.[20] As

a result, Levi's challenge in this regard also fails, and we therefore affirm his

*Judgments affirmed. Division Per Curiam. All Judges concur.*

---

[20] See *Nelson*, 305 Ga. App. at 66 (1); *Ruffin*, 201 Ga. App. at 792 (1). See also *Amica*, 307 Ga. App. at 282 (2). See also generally *Hampton*, 295 Ga. at 669 (2); *Lewis*, 233 Ga. App. at 562 (2).